UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:17-cr-00246-TWP-MJD-1 |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| ROGER RICHARDSON | (COMPASSIONATE RELEASE) |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:17-cr-00246-TWP-MJD |
| ) | |
| ROGER RICHARDSON, ) | |
| ) | |
| Defendant. ) | |

## ORDER

This matter is before the Court on Roger Richardson's ("Mr. Richardson") Motions for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release). (Dkts. 50, 64.) Mr. Richardson seeks immediate release from incarceration because of the risks to his health associated with the Coronavirus pandemic and for extraordinary family circumstances. *Id*. For the reasons stated below, his Motions are **denied.**

## I. BACKGROUND

On November 14, 2017, a search warrant was executed at Mr. Richardson's residence, and narcotics officers founds 50 grams of cocaine base, 176 grams of crack cocaine, a digital scale, and approximately $3,919.00 in U.S. currency. (Dkt. 41 at 3.) Mr. Richardson admitted to officers in a post-*Miranda* statement that he "possessed with intent to distribute and distributed no less than 2.8 Kilograms of cocaine base within the Southern District of Indiana between March and November 2017." *Id.* At the time of his arrest for the instant offense, Mr. Richardson was serving a term of supervised release for a previous conviction related to distribution of cocaine. *Id.* at 4. On September 6, 2019, Mr. Richardson pled guilty to Count I, possession with intent to distribute 280 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1). (Dkt. 44.) The same

day, Mr. Richardson was sentenced to 120 months of imprisonment followed by a term of 5 years' supervised release. (Dkt. 46.)

Mr. Richardson filed a *pro se* motion for compassionate release, (Dkt. 50), on May 22, 2020, and the Court appointed counsel for him and stayed the case. (*See* Dkts. 51, 53.) CJA counsel appeared on Mr. Richardson's behalf and later withdrew from the case, and the stay was lifted. (Dkts. 52, 60, 62, 63.) The Government agrees that Mr. Richardson has exhausted his administrative remedies. (Dkt. 65 at 7.) As ordered by the Court, Mr. Richardson supplemented his Motion on August 4, 2020. (Dkt. 64.)

The Government responded in opposition on August 18, 2020 arguing that Mr. Richardson has not established that "extraordinary and compelling reasons" support a sentence reduction. Nor has he met his burden to show that a reduction is warranted in light of the danger that he would pose to the community considering the sentencing factors of 18 U.S.C. § 3553(a). (Dkt. 65.) Mr. Richardson did not file a reply. The Motion for sentence reduction is now ripe for the Court's consideration.

## II. DISCUSSION

Mr. Richardson is 42 years old and is currently housed at the Federal Correctional Institution in Milan, Michigan ("FCI Milan"). Mr. Richardson's projected release date is on or about July 9, 2028, assuming good-time credit. (Dkt. 65 at 2.) He seeks compassionate release because FCI Milan "is having a difficult time containing the virus." (Dkt. 50 at 2.) Mr. Richardson asserts that the facility is "rife with infection" and that the Warden has materially misrepresented the actual numbers of COVID-19 cases. (Dkt. 64 at 4.) He also checked a box on a form motion indicating that the caregiver of his minor children has died or become incapacitated and that he is the only available caregiver for the children. *Id.* at 2. Mr. Richardson describes his conduct in

3

prison as "excellent," states that he has a "strong re-entry plan" with "family ties" that can assist him and states that he "has been sober." (Dkt. 50 at 2, 3.) In response, the Government argues that Mr. Richardson would be entering the same environment, namely, the residence where he was arrested for his drug offense, that he poses a danger to the community, and that the remaining 18 U.S.C. § 3553(a) factors weigh against his release. (Dkt. 65 at 23-24.)

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is also permitted to file such a motion after exhausting all administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c) contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes.

Section 1B1.13 sets forth the following considerations. First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or

5

registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . "). It has not been updated since the First Step Act amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* at 1180. Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling reason warranting a sentence reduction; (2) whether the defendant presents a danger to the safety

of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

A.     **Extraordinary and Compelling Reasons Warranting a Sentence Reduction**

For the reasons discussed herein, Mr. Richardson has failed to show that extraordinary and compelling reasons warrant a sentence reduction under the First Step Act.

1.     **Minor Children**

In his Motion, Mr. Richardson checked a box indicating that the caregiver of his children has died or become incapacitated and that he is the only available caregiver for the children. (Dkt. 64 at 2.) That is, he contends that Subsection (C) of Application Note 1 to § 1B1.13 provides him with an extraordinary and compelling reason warranting a sentence reduction. Subsection C defines "extraordinary and compelling" reason to include: "Family Circumstances—(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children." U.S.S.G. § 1B1.13, Application Note 1(C). Beyond his checkmark in this box, however, Mr. Richardson fails to describe his family circumstances or argue how Subsection (C) applies to his situation. Rather, he states that if released he "will be staying with [his] wife and children." (Dkt. 64 at 5.) The Presentencing Investigation Report ("PSR") dated August, 12, 2019 reported that Mr. Richardson has four living children, then ages 21, 16, 14 and 12. (Dkt. 41 at 14.) The PSR indicated that the children all lived with their mother, Sheryle Richardson, and that she and Mr. Richardson separated in 2007. *Id.* Mr. Richardson's Motion also reflects that he has a girlfriend, Sherly Johnson, who has children—but Mr. Richardson is not their biological father. (Dkt. 64 at 7.) It is unclear to the Court whether Mr. Richardson intends to live with his wife or his girlfriend if he is released, and it is not clear whether he is alleging that his biological children are the children

7

who are in need of a caregiver. Mr. Richardson did not file a reply to further clarify or present any additional information regarding his family circumstances.

This Court has decided cases in which it found extraordinary and compelling family circumstances supporting release, but these prior rulings are factually distinguishable from Mr. Richardson's motion—where death or incapacitation of the minor children's caregiver has not been shown by any evidence. *See, e.g., United States v. Fortson*, No. 1:18-cr-00063-TWP-MJD, Dkt. 79 (S.D. Ind. July 13, 2020) (defendant showed extraordinary and compelling reasons for release after the death of his minor son's mother); *see also United States v. Little*, No. 1:14-cr-00190-SEB-MJD, Dkt. 68 (S.D. Ind. Aug. 10, 2020) (defendant showed extraordinary and compelling reasons for release where his minor children's mother died and there were no other relatives available to care for them). Because Mr. Richardson has not shown that death or incapacitation of a caregiver has occurred and that he is the only available caregiver for the children he refers to in his Motion, his family circumstances do not constitute an extraordinary and compelling reason warranting a sentence reduction.

## 2. General Threat of COVID-19 and Health Conditions

The next question the Court must consider is whether the Court should exercise its broad discretion to find extraordinary and compelling circumstances based on the risk Mr. Richardson faces from the COVID-19 pandemic. The Court declines to do so.

While the Court acknowledges the fear and challenges that COVID-19 presents and recognizes that FCI Milan has experienced an outbreak of the virus,[1] the general threat of COVID-19 is not an extraordinary and compelling reason warranting a sentence reduction. *See United*

---

[1] *See* https://www.bop.gov/coronavirus/ (last visited February 3, 2021) (reporting the following COVID-19 statistics for FCI Milan: 14 active inmate cases, 4 active staff cases, 3 inmate deaths, 244 inmates recovered, and 76 staff recovered).

8

*States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Jackson*, No. 1:18-cr-314-RLY-MJD-01, Dkt. 33 (S.D. Ind. Aug. 12, 2020) (concluding that the general threat of contracting COVID-19 is not an extraordinary and compelling reason warranting a sentence reduction). As such, the Court has consistently denied motions for compassionate release from defendants who are not at an increased risk of developing severe symptoms if they contract COVID-19, even when they are incarcerated in a "hotspot" for COVID-19 infections. *See United States v. Dyson*, 2020 WL 3440335, at *3 (S.D. Ind. June 22, 2020) (collecting cases).

Mr. Richardson does not contend that he has contracted COVID-19. Instead, he generally states that he "like many Americans suffers from hypertension and according to CDC, if he contracts COVID-19 he would almost certainly die." (Dkt. 50 at 1-2.) He lists additional medical diagnoses of "swollen ankles, hemorrhoids, hernia, and cardiac problems". (Dkt. 64 at 5.) Mr. Richardson also states that he takes prescription medication for blood pressure and "pulmonary hypertension" and uses an inhaler and breathing machine. *Id.* at 6. His medical records do not, however, indicate that he suffers from pulmonary hypertension; instead, they show only that he suffers from primary essential hypertension, as indicated by his medication orders. (Dkt. 64-1 at 2, 5) (amlodipine or hydrochlorothiazide orders for "essential (primary) hypertension"). Mr. Richardson's medical records refer to his condition as "hypertension" or "essential (primary) hypertension," and do not document a diagnosis of "pulmonary hypertension". *Id.* at 3-4, 7, 14, 27, 43-44 (pulmonary inspection was within normal limits and assessment notes document essential

primary hypertension). There are critical differences between essential primary hypertension and pulmonary hypertension.[2]

Swollen ankles, hemorrhoids, and hernia are not conditions that the Centers for Disease Control and Prevention ("CDC") recognizes as increasing the risk of severe COVID-19 symptoms.[3] Thus, those conditions do not support Mr. Richardson's claim to have extraordinary and compelling reasons warranting a sentence reduction.

The CDC indicates that the following heart conditions increase the risk of severe illness from COVID-19: heart failure, coronary artery disease, cardiomyopathies, and pulmonary hypertension.[4] The CDC also recognizes that having "other cardiovascular or cerebrovascular disease, such as hypertension (high blood pressure), or stroke, might increase [the] risk of severe illness from COVID-19."[5] Although Mr. Richardson contends that he has "pulmonary hypertension," his medical records do not support that contention. The Court thus finds that he has not shown that he suffers from pulmonary hypertension.

---

[2] "Pulmonary hypertension is a type of high blood pressure that affects the arteries in your lungs and the right side of your heart." *See* https://www.mayoclinic.org/diseases-conditions/pulmonary-hypertension/symptoms-causes/syc-20350697 (last visited Jan. 26, 2021). "High blood pressure (hypertension) is a common condition in which the long-term force of the blood against your artery walls is high enough that it may eventually cause health problems, such as heart disease . . . . There are two types of high blood pressure. **Primary (essential) hypertension** [:] For most adults, there's no identifiable cause of high blood pressure. This type of high blood pressure, called primary (essential) hypertension, tends to develop gradually over many years. **Secondary hypertension** [:] Some people have high blood pressure caused by an underlying condition. This type of high blood pressure, called secondary hypertension, tends to appear suddenly and cause higher blood pressure than does primary hypertension." *See* https://www.mayoclinic.org/diseases-conditions/high-blood-pressure/symptoms-causes/syc-20373410 (last visited Jan. 26, 2021).

[3] *See People With Certain Medical Conditions,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 26, 2021).

[4] *See People with Certain Medical Conditions—Heart Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#heart-conditions (last visited Jan. 26, 2021).

[5] *Id.*

10

Mr. Richardson also contends generally that he has "cardiac problems." But Mr. Richardson's BOP medical records do not indicate that he has any notable cardiac conditions or conditions that the CDC has recognized as definitively increasing the risk of severe COVID-19 symptoms. (*See* Dkt. 64-1 at 1-53.) In fact, in a history and physical on February 18, 2020, Mr. Richardson denied having cardiovascular issues. *Id.* at 7. Additionally, the PSR indicated that Mr. Richardson "stated he has never been involved in any serious accidents or illnesses and is not currently under medical treatment." (Dkt. 41 at 14.)

Mr. Richardson's medical records do indicate that he has primary essential hypertension, but they also show that he is being treated with medication and his condition is stable. (Dkt. 64-1 at 5 ("HTN: stable").) The Government argues that Mr. Richardson's hypertension "appears to be managed and controlled with medication," and this isolated medical condition does not rise to a level of severity to establish extraordinary and compelling reasons warranting release. (Dkt. 65 at 15.) The Court agrees, as it finds nothing in the medical records to indicate otherwise, nor has Mr. Richardson made any arguments to the contrary. Regardless of how well Mr. Richardson's hypertension is controlled, it is a very common condition, https://www.cdc.gov/bloodpressure/facts.htm (last visited Jan. 25, 2021) (noting that nearly half of adults in the United States have hypertension or are taking medication for hypertension), and this Court has consistently held that hypertension alone is not an extraordinary and compelling reason warranting a sentence reduction, *see United States of America v. Jones*, No. 1:15-cr-92-JMS-MJD-01, Dkt. 65 (S.D. Ind. Sept. 17, 2020); *United States v. Davis*, No. 3:02-cr-2-RLY-CMM-01, Dkt. 142 (S.D. Ind. Nov. 17, 2020); *United States v. Mardis*, No. 1:14-cr-68-TWP-TAB-05, Dkt. 361 (S.D. Ind. Jan. 13, 2021).

In short, Mr. Richardson suffers from primary essential hypertension, but he is in his forties and otherwise generally healthy. Accordingly, the Court declines to exercise its discretion to find that the risks Mr. Richardson faces from the COVID-19 pandemic constitute an extraordinary and

**B.     18 U.S.C. § 3553 Factors**

The Court notes that, even if Mr. Richardson's desire to care for his children and his vulnerability to COVID-19 amount to extraordinary and compelling reasons that could warrant a sentence reduction, the Court would deny the motion. Section 3582(c)(1)(A)(i) allows the Court to reduce a sentence if it finds that "extraordinary and compelling reasons" warrant a sentence reduction," after considering the factors set forth in [18 U.S.C. § ] 3553(a) to the extent they are applicable." Here, the sentencing factors in § 3553(a) do not favor release.

The Government emphasizes the severity of Mr. Richardson's offense in that "Richardson trafficked an extensive amount of cocaine over a nine month period, all while on federal supervised release." (Dkt. 65 at 22.) At the time of Mr. Richardson's instant offense, he was already serving a term of supervised release following a prior conviction for conspiracy to possess with intent to distribute in excess of 5 kilograms of cocaine." (Dkt. 41 at 4.) Mr. Richardson's criminal history of possession of cocaine dates back to age 16, and his adult convictions additionally include resisting law enforcement, possession of marijuana, and offenses related to cocaine. *Id.* at 6-10.

Moreover, the Court notes that Mr. Richardson's re-entry plan involves his residence in the same home that was the location of his offense. The Government argues that the record gives it little confidence that this living arrangement would be acceptable – as "Richardson was living under nearly identical circumstances when arrested in the present case." (Dkt. 65 at 23.) While the Court recognizes Mr. Richardson's statements that he has maintained excellent conduct in prison and has maintained his sobriety, Mr. Richardson provides no evidence, other than his own

12

contentions, to illustrate his rehabilitation to the Court. Thus, these statements alone do not outweigh the nature and circumstances of his instant offense of trafficking drugs and his recent history of drug offenses.

Mr. Richardson's guilty plea was entered a little over one year ago, on September 6, 2019, and he was sentenced by the undersigned the same day. Mr. Richardson has served only approximately 30% of his sentence, and the Court finds that release now would not provide just punishment or reflect the seriousness of his offense.

### III. CONCLUSION

For the reasons listed above, Mr. Richardson's Motions for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A), (Dkts. [50] and [64]), are **DENIED**.

**SO ORDERED.**

Date:  2/5/2021

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Roger Richardson, #08602-028
FEDERAL CORRECTIONAL INSTITUTE
P.O. Box 1000
Milan, Michigan  48160

M. Kendra Klump
UNITED STATES ATTORNEY'S OFFICE
kendra.klump@usdoj.gov

Michelle Patricia Brady
UNITED STATES ATTORNEY'S OFFICE
michelle.brady@usdoj.gov

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE
shelese.woods@usdoj.gov